**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **3:15-CR-0152** |
| | | **(JUDGE MANNION[1])** |
| **DAVID PARKS,** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

Pending before the court are the defendant's objections to the presentence report. (Doc. 46). Defendant objects to the report which finds that he qualifies as a career offender under §4B1.2 of the Guidelines. Defendant also requests a downward variance pursuant to 18 U.S.C. §3553(a)(1). Based upon the court's review of the record in this case, the defendant's objections will be overruled and he will sentenced as a career offender. Defendant's request for a downward variance will be held in abeyance pending his sentencing hearing.

**I.   BACKGROUND**

On July 22, 2015, David Parks, (the "defendant"), was charged in an indictment with two counts of armed bank robbery, in violation of 18 U.S.C. §2113(d). (Doc. 1). On May 5, 2016, the government filed a superseding six count information charging Parks with three counts of bank robbery, in

_____

[1]This case was originally assigned to the Honorable Edwin M. Kosik. However, after defendant plead guilty and before he has been sentenced, the instant action was verbally reassigned to the undersigned September 9, 2016.

violation of 18 U.S.C. §2113(a), (Counts 1-3), and three counts of armed bank robbery, in violation of 18 U.S.C. §2113(d), (Counts 4-6). (Doc. 33). On this same day, Parks pled guilty to all six charges in the information.

On July 22, 2016, the Probation Office prepared the presentence report, ("PSR") and later issued a revised PSR on August 29, 2016. (Doc. 39). The Probation Office found that Parks is a career offender under the United States Sentencing Guidelines, ("USSG"). Specifically, it found that one of Parks' instant offenses and two prior convictions, namely, his 1991 federal bank robbery conviction and his 2004 Connecticut first degree robbery conviction, were crimes of violence under USSG §4B1.2. Parks filed his objections to the report on October 3, 2016. (Doc. 46). The government filed its response on November 4, 2016. (Doc. 50).

Specifically, the PSR found that Parks' sentencing guidelines reflect a total offense level of 31, criminal history category of VI and an advisory guideline range of 188-235 months imprisonment. (Doc. 39, PSR ¶ 110). Parks states that without the career offender enhancement, his offense level would be 30 and his criminal history a category V, resulting in an advisory guideline range of 151-188 months. If the court grants Parks a three level departure for acceptance of responsibility, his advisory guideline would be a total offense level of 27, a criminal history category V, and an advisory guideline range of 120-150 months.

Thus, Parks indicates that his total exposure to prison time would be significantly reduced if he is not sentenced as a career offender, i.e., from a

2

guideline range of 188-235 months to a guideline range of 120-150 months.

No doubt, to qualify as a career offender, one of Parks' instant offenses must be a crime of violence and he must have two prior felony convictions for either a crime of violence or a controlled substance offense under USSG §4B1.1(a). Relying on Johnson v. United States, — U.S. —, 135 S.Ct. 2551 (2015), Parks contends that none of his instant offenses qualify as a crime of violence and that his two prior convictions do not qualify as crimes of violence. As such, he maintains that he should not be sentenced as a career offender.

## II.   DISCUSSION

Parks' sentencing guideline range was calculated in the PSR based on the 2015 Guidelines Manual as well as the August 1, 2016 amendments, including §4B1.2(a) (Aug. 1, 2016). (PSR ¶ 18). Parks' advisory guideline range in the PSR was enhanced based on the finding that he was a career offender. Parks contends that insofar as the PSR finds that the above stated offenses qualify as crimes of violence under the 2016 amended list of enumerated offenses, it violates the *Ex Post Facto* Clause. Parks points out that "[r]obbery was not an enumerated offense within the text of the guideline prior to the 2016 amendments when [his] offenses were committed" and that "[a]t that time, robbery appeared only in the commentary [of the guidelines]." (Doc. 46 at 5). The government does not disagree with Parks' *ex post facto* argument but it contends that "it makes no practical difference whether the

3

court applies the version of USSG §4B1.2 in effect from February through July 2015 when Parks committed the [instant] bank robberies [], or the new amended version of the guidelines effective August 1, 2016." The government states that both versions specifically enumerate robbery as a crime of violence albeit that in the 2015 version robbery was enumerated in the commentary to the guideline and in the August 2016 version robbery is specifically listed in the text of the guideline.[2] (Doc. 50 at 3).

The August 1, 2016 amended §4B1.2(a) will not be utilized in this case, out of an abundance of caution, in light of his *ex post facto* claim. There is no question that the amended guideline was effective on August 1, 2016 which was after Parks committed the instant offenses but prior to his sentencing. As the court recently noted in U.S. v. Lewis, 2017 WL 368088, *2 n. 1 (E.D.Pa. Jan. 25, 2017), "[t]he Court need not resolve [the] dispute [of

---

[2]In the August 1, 2016 amendments to the guidelines, the definition of a crime of violence in §4B1.2(a) states:

> (a) The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that [either]
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is murder, voluntary manslaughter, kidnaping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. §5845(a) or explosive material as defined in 18 U.S.C. §841(c).

4

whether the 2016 version of the guidelines should be used, or whether the *Ex Post Facto* Clause requires the use of the guidelines in effect at the time the offenses were committed in 2015] because it finds that aggravated assault is a crime of violence under the elements clause, §4B1.2(a)(1), which is identical in both versions of the guidelines." As discussed below, this court finds that Parks' federal bank robbery convictions and his Connecticut first degree robbery conviction are crimes of violence under the elements clause of §4B1.2(a)(1) which is the same in the 2015 and 2016 versions of the guidelines.

In the alternative, the court agrees that in Parks' case it will not make any difference as to which version of the guidelines is used since the term crime of violence in the 2015 version of §4B1.2(a) included robbery as an enumerated offense in the commentary and the commentary can be used to determine robbery is a crime of violence. As the court succinctly explained in U.S. v. Graves, 2016 WL 5934206, *3 (M.D.Pa. Oct. 12, 2016):

> Here, we agree with the Government and find that an application of either version of the Guideline (former or [Aug. 1, 2016]) does not result in a higher Guideline range for Defendant. [U]nder either version of the Guideline, we would analyze Defendant's prior convictions for North Carolina common law robbery as an enumerated offense. Although the amended text makes this analysis clearer by listing robbery in the Guideline's text, the inclusion of robbery as an offense in the commentary of the former Guideline results in the same analysis under Third Circuit precedent. Therefore, it makes little difference which version of the Guideline we should apply in this case. Nonetheless, to avoid any *Ex Post Facto Clause* issues, we analyze Defendant's prior convictions under the former text of U.S.S.G. §4B1.2.

5

Thus, as in *Graves*, the court will analyze Parks' instant robbery offense as well as his 1991 federal robbery conviction and his 2004 Connecticut first degree robbery conviction under the 2015 version of §4B1.2. As discussed below, the court finds that robbery is a crime of violence under the elements clause of the 2015 version of §4B1.2 and that this version of the guidelines included robbery in the commentary and was not an application of the residual clause standard.

Parks contends that "[f]ollowing the elimination of the residual clause [in the ACCA] by Johnson v. United States, 135 S.Ct. 2551 (2015), robbery which was listed only in the commentary to the guideline and must have been interpretive of the residual clause is not a crime of violence." Parks states that in response to *Johnson*, the Sentencing Commission decided to amend §4B1.2 in 2016 and move the crime of robbery along with other offenses from the commentary and list them in the guideline's text demonstrating that "the position of robbery in the commentary was in fact dependant upon the residual clause." (Doc. 46 at 5). Parks points out that the career criminal residual clause as contained in the former version of §4B1.2(a)(2) is identical to the residual clause of the Armed Career Criminal Act ("ACCA") contained in 18 U.S.C. §924(e)(2)(B)(ii) which the Supreme Court in *Johnson* found was unconstitutionally vague. The *Johnson* Court also found that a sentence increased under the residual clause of the ACCA violated due process.

Recently, the court in United States v. Goode, 2016 WL 48211, *1 (E.D.Pa. Jan. 5, 2016), discussed the *Johnson* case and stated:

6

In *Johnson*, the Supreme Court held that a portion of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e)(2)(B)(ii), was unconstitutionally vague. 135 S.Ct. at 2563. The ACCA allows for enhanced sentencing for criminal defendants who have at least three previous convictions for a "violent felony" or "serious drug offense." The defendant in *Johnson* had a qualifying previous conviction for the possession of a sawed-off shotgun that had a barrel shorter than allowed by law. Id. at 2556. The government claimed that this conviction was a violent felony because it fell under the residual clause of the ACCA's definition of violent felony. Id. The residual clause defined violent felony as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B)(ii). The Supreme Court held "that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process. Johnson, 135 S.Ct. at 2563. The residual clause violates due process because the clause is unconstitutionally vague as it "denies fair notice to defendants and invites arbitrary enforcement by judges." Id. at 2557. However, the Court limited its holding by stating: "Today's decision does not call into question application of the Act [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id. at 2563.

At issue here is whether the effect of *Johnson* on the guideline's residual clause of §4B1.2(a) precludes Parks from being sentenced as a career offender.

The term "crime of violence" in the 2015 version of §4B1.2(a) was an offense that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another ["elements" clause or "force" clause], or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives ["enumerated offenses" clause], or
otherwise involves conduct that presents a serious potential risk of physical injury to another ["residual" clause].

U.S. v. Dublin, 629 Fed.Appx. 448, 451 (3d Cir. 2015). "In *Johnson*, the

Supreme Court struck down the so-called residual clause of this definition [of the ACCA]—'or otherwise involves conduct that presents a serious potential risk of physical injury to another'—as void for vagueness." Id. (citing Johnson, 135 S.Ct. at 2563). In particular, *Johnson* held that the residual clause of the ACCA definition of crime of violence, which was the same as the residual clause of §4B1.2(a), was unconstitutionally vague. As the government points out, (Doc. 50 at 4), *Johnson* did not disturb the other parts of the ACCA, including "the ACCA's other two means of determining whether a potential predicate crime is a crime of violence: namely, the 'elements' clause at 924(e)(2)(B)(I) dealing with the use or threatened use of force, and the 'enumerated offense' clause at 924(e)(2)(B)(ii)." *See also* Dublin, 629 Fed.Appx. at 451. Following *Johnson*, "[t]he 2016 amendment to U.S.S.G. §4B1.2(a) [] eliminated the Guideline's former residual clause." Graves, 2016 WL 5934206, *2.

Thus, an issue raised in this case is whether the Supreme Court's decision in *Johnson* invalidating the "residual clause" of the ACCA's definition of a crime of violence should also apply with respect to the U.S.S.G.'s definition of a crime of violence under the career offender guideline, §4B1.2.[3]

---

[3]In U.S. v. Swerdon, —F.Supp.3d—, 2016 WL 4988065, *3 (M.D.Pa. Sept. 19, 2016), the court stated "[t]he Third Circuit Court of Appeals recently determined this very issue that *Johnson*'s holding—the ACCA's residual clause, 18 U.S.C. §924(e)(1), is unconstitutional as void for vagueness under the Fifth Amendment's Due Process Clause—applies to the identically-worded Career Offender Guidelines' residual clause." (citing U.S. v. Calabretta, 831 F.3d 128, 134 (3d Cir. 2016)); U.S. v. Steiner, — F.3d ----,

The definition of crimes of violence in the U.S.S.G. includes a residual clause identical to that in ACCA. Both the defendant and the government acknowledge that on June 27, 2016, the Supreme Court granted certiorari in Beckles v. U.S., No. 15–8544, —— U.S. ——, 136 S.Ct. 2510, 2016 WL 1029080 (Jun. 27, 2016), to decide, in part, whether the *Johnson* decision applies to the residual clause of §4B1.2(a)(2) of the U.S.S.G. and if so, whether it should apply retroactively to cases on collateral review.[4]

No doubt that after *Johnson*, the Third Circuit in U.S. v. Calabretta, 831 F.3d 128, 136 (3d Cir. 2016), held that the residual clause of the career offender guideline in §4B1.2 was unconstitutionally vague. See Steiner, 2017 WL 437657, \*13 n. 83. As in *Graves*, the court does not agree with the government, (Doc. 50 at 5), that "*Calabretta* is clearly distinguishable from the instant case." The *Graves* Court explained, "[t]he Third Circuit's holding in *Calabretta* was not limited to an as-applied challenge to the convictions of 'Death by Auto' or 'Eluding in the Second Degree' at issue in that case, but rather unequivocally stated that 'the 'residual clause' in §4B1.2 of the Guidelines is unconstitutionally vague.'" 2016 WL 5934205, \*3 (citing Calabretta 831 F.3d at 133-34); *Steiner, supra*.

2017 WL 437657, \*13 n. 83 (3d Cir. Feb. 1, 2017).

[4]"The Eleventh Circuit in *Beckles* affirmed the denial of a §2255 motion challenging the §4B1.2(a)(2) residual clause based on *Johnson* partially on the grounds that the opinion in *Johnson* does not purport to affect anything other than the ACCA's residual clause." Blow v. U.S., 829 F.3d 170, 172 (2d Cir. 2016) (citing Beckles v. U.S., 616 Fed.Appx. 415, 416 (11th Cir. 2015)).

Robbery was an enumerated offense constituting a "crime of violence" under U.S.S.G. §4B1.2 in effect in 2015 within the commentary to the career offender guideline. *See* Graves, 2016 WL 5934205, *6 ("robbery was listed in Application Note 1 of the commentary to the Guideline") (citing U.S.S.G. §4B1.2 cmt. 1 (2015)). The court agrees with the government, (Doc. 50 at 6), that "[n]o person of reasonable intelligence could possibly misinterpret the commentary to U.S.S.G. §4B1.2 and not know that prior robbery convictions would subject him to an advisory guideline range enhancement." Based on Stinson v. U.S., 508 U.S. 36 (1993), the court will rely upon the commentary to the career offender guideline to determine whether Parks' robbery offenses are included in the definition of "crime of violence." Specifically, in Stinson, 508 U.S. at 38, the Supreme Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." The government notes, (Doc. 50 at 7 n. 2), that the Sentencing Commission stated in the commentary to the 2016 amendment to §4B1.2(a)(2) (2016) at page 5 that "[a]s has always been the case, such [enumerated] offenses qualify as crimes of violence regardless of whether the offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another." "The commentary [to U.S.S.G. §4B1.2(a)(2) (2015)] did not indicate that the enumerated offenses qualified as crimes of violence

10

only under the residual clause" and "that the Commission intended the enumerated offenses to qualify as crimes of violence under the Guidelines without determining whether each offense satisfied a discrete portion of §4B1.2(a)'s definition." (Doc. 50 at 8-9). As the court stated in Graves, 2016 WL 5934205, *6, "the commentary unambiguously states that it is interpreting the phrase 'crime of violence' under §4B1.2(a)." *See also* U.S. v. Marrero, 743 F.3d 389, 397 (3d Cir. 2014). The *Graves* Court recognized the circuit split on the issue but stated that it would "follow the Third Circuit's approach in *Marrero*, which 'reaffirm[ed] that offenses listed in Application Note 1 are 'enumerated' for purposes of the crime-of-violence analysis.'" Id. at *7 (citing Marrero, 743 F.3d at 399). As such, the court concurs with the *Graves* Court which held an offense can "constitute a 'crime of violence' under the enumerated offenses clause, even though the enumerated offense is listed in the commentary and not the text of the Guideline." Id. at *7 (citing Marrero, 743 F.3d at 399); *see also* U.S. v. Knight, 2016 WL 223701, *2 (D.N.J. Jan. 19, 2016) ("Application Note 1 of U.S.S.G. § 4B1.2 provides in relevant part that 'crime of violence' also encompasses certain enumerated offenses, including 'murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.'" U.S.S.G. §4B1.2, cmt. n. 1 (i.e., the "enumerated offenses").

The court does not agree with Parks who contends that the commentary

was interpretive of the residual clause and that "robbery in the commentary was in fact dependent upon the residual clause." (Doc. 46 at 5). In short, the court agrees that "the enumerated list of offenses in the commentary did not merely construe the former residual clause, but provided an independent explanation of the term 'crimes of violence.'" (Doc. 50 at 11).

Thus, the court will rely upon the commentary to U.S.S.G. §4B1.2 in effect in 2015, but not upon the residual clause of §4B1.2, for its determination that all of Parks' robbery convictions qualify as enumerated offenses. *See* Graves, 2016 WL 5934205, \*3, \*5 (court held that defendant's two prior convictions for North Carolina common law robbery did not constitute crimes of violence under the residual clause "because the clause is unconstitutional under *Calabretta*" but it held that defendant's prior convictions constituted "crimes of violence under the enumerated offenses clause of U.S.S.G. §4B1.2 [2015]). As such, the court does not need to address whether *Johnson* invalidates the residual clause of U.S.S.G. §4B1.2.

"[B]ecause enumerated offenses such as robbery are not defined in the Guidelines or its commentary, [the court] must define the elements of robbery according to its "generic, contemporary meaning." Graves, 2016 WL 5934205, \*7 (citing Taylor v. United States, 495 U.S. 575, 598 (1990)). Next, the court must "compare the elements of the crime of conviction to the generic form of the offense as defined by the States, learned treatises, and the Model Penal Code." Id. (citing Marrero, 743 F.3d at 399). In short, the

court must compare "the elements of the crime of conviction with the generic offense" and determine "whether the elements of the state crime and generic offense make the requisite match." Id. at *8 (citations omitted). Thus, in order for Parks' robbery convictions to constitute crimes of violence under §4B1.2(a)(2)'s enumerated offenses clause, "the offense must 'substantially correspond' to the generic definition of robbery." Id. (citing Marrero, 743 F.3d at 400).

Based on *Marrerro*, the *Graves* Court, id. at *8, looked to the Model Penal Code, MPC §222.1, for the generic meaning of robbery, and which defines robbery as:

> (1) Robbery Defined. A person is guilty of robbery if, in the course of committing a theft, he:
>  a. inflicts serious bodily injury upon another; or
>  b. threatens another with or purposely puts him in fear of immediate serious bodily injury; or
>  c. commits or threatens immediately to commit any felony of the first or second degree.
>
> An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

The court in *Graves*, id., explained that "[t]he majority of states describe robbery as a 'common-law felony' that requires a "1) trespassory 2) taking and 3) carrying away of the 4) personal property 5) of another 6) with intent to steal it, where 7) the property is taken from the person or presence of the other and 8) the taking is accomplished by means of force or putting in fear." (citations omitted). Based on the definitions provided below for federal bank

13

robbery and first degree robbery under Connecticut law, the court finds that they "substantially correspond[] to the definition of generic robbery employed by most states." Id. at *9. Therefore, "[u]nder the prevailing, generic definition, [federal bank robbery and first degree robbery under Connecticut law] categorically qualif[y] as [ ] enumerated offense[s] of 'robbery' and constitute[] 'crime[s] of violence' under the enumerated offenses clause of U.S.S.G. §4B1.2." Id. (citation omitted).

In addition to finding that Parks' prior convictions as well as his instant conviction constitute crimes of violence under the enumerated offenses clause of §4B1.2 (2015), the court finds that these convictions are crimes of violence under the elements clause of §4B1.2 (2015). "Under the former text of the Guideline in effect at the time of [Parks'] offense[s], there are three ways in which [his] convictions can constitute crimes of violence: the elements clause; the enumerated offenses clause; or the residual clause." Graves, 2016 WL 5934206, *3; *see also* U.S. v. Wilson, —F.Supp.3d—, 2016 WL 6310620, *9 (E.D.Pa. Oct. 27, 2016) ("A crime is a crime of violence if it satisfies either the elements clause or the residual clause."). "A crime falls within the elements clause when it contains, as an element, the use of violent force—that is, 'force capable of causing physical pain or injury to another person.'" U.S. v. Gorny, 655 Fed.Appx. 920, 925 (3d Cir. 2016)(citations omitted); *see also* Johnson, 559 U.S. 133, 140 (2010) (Supreme Court stated "in the context of a statutory definition of 'violent

14

felony,' the phrase 'physical force' means violent force-that is, force capable of causing physical pain or injury to another person" and which "connotes a substantial degree of force").

In Graves, 2016 WL 5934206, *4, the court elaborated:

In determining whether a conviction qualifies as a "crime of violence" under the elements clause of §4B1.2(a)(1), we "are required to follow the 'categorical approach,' wherein the crime of conviction is evaluated as to whether it categorically constitutes a crime of violence." United States v. Jones, 740 F.3d 127, 133 (3d Cir. 2014). "That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the [elements clause], without inquiring into the specific conduct of this particular offender." Id. at 133 (quoting James v. United States, 550 U.S. 192, 202 (2007)).

See also Lewis, 2017 WL 368088, *2 ("The inquiry into whether a predicate offense is a crime of violence generally requires a categorical approach, which focuses not on the specific conduct of that offense but instead on its elements.") (citing Mathis v. United States, 136 S.Ct. 2243, 2251 (2016)).

With respect to Parks' present offenses of armed bank robbery under 18 U.S.C. §2113(d), and his prior federal conviction for bank robbery, (Doc. 39 ¶ 78), the court finds that they are crimes of violence under the elements test of §4B1.2(a).[5] See U.S. v. King, 2016 WL 1271387 (M.D.Pa. April 1,

---

[5]Bank robbery is defined in 18 U.S.C. §2113(a) as follows:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union,

15

2016) (Court found that armed bank robbery is a crime of violence under 18 U.S.C. §924(c)(3).); U.S. v. Williams, 2016 WL 7104297 (M.D.Pa. Dec. 6, 2016) ("The court concludes that [defendant's] armed bank robbery charge under 18 U.S.C. §2113(a), (d) constitutes a predicate 'crime of violence.'"); In re Hines, 824 F.3d 1334, 1336-37 (11th Cir. 2016) ("[A] conviction for armed bank robbery clearly meets the requirement ... to include as an element, 'the use, attempted use, or threatened use of physical force against the person or property of another."); U.S. v. McNeal, 818 F.3d 141, 152-53 (4th Cir. 2016) (Fourth Circuit held that "armed bank robbery is unquestionably a crime of violence, because it 'has as an element the use, attempted use, or threatened use of physical force'".); U.S. v. McBride, 826 F.3d 293, 296 (6th Cir. 2016) (bank robbery under 18 U.S.C. §2113(a) falls within §4B1.2(a)'s use-of-physical-force clause since it can be committed "by

---

or any savings and loan association...shall be...imprisoned not more than twenty years.

The court in King, 2016 WL 1271387, *2 n. 5, noted that "[i]n addition to the elements of bank robbery, the statutory definition of armed bank robbery includes an assaultive element," that provides as follows:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. §2113(d).

force and violence, or by intimidation"); U.S. v. Wilson, —F.Supp.3d—, 2016 WL 6310620, *9 (E.D.Pa. Oct. 27, 2016) ("armed bank robbery [under 18 U.S.C. §2113(d)] is a crime of violence under the elements clause of 18 U.S.C. §924(c)(3)").[6]

As the court in Wilson, —F.Supp.3d—, 2016 WL 6310620, *10 explained:

> defendants were charged with the predicate offense of armed bank robbery in violation of 18 U.S.C. §2113(d). Section 2113 makes it illegal to take anything of value from a bank "by force and violence, or by intimidation." 18 U.S.C. §2113(a). This requires "proof of force or threat of force." United States v. Askari, 140 F.3d 536, 541 (3d Cir.), vacated on other grounds, 159 F.3d 774 (3d Cir. 1998). If the taking is by intimidation, the question is whether "an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." Id. (quoting United States v. Woodrup, 86 F.3d 359, 363 (4th Cir. 1996)). A defendant commits armed bank robbery if during a bank robbery under Section 2213(a), he "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d). A dangerous weapon or device is "any object that can be used by one person to inflict severe bodily harm or injury upon another person." United States v. Beckett, 208 F.3d 140, 152 (3d Cir. 2000).

In Counts 4-6 of the instant information charging Parks with armed bank robbery, (Doc. 33), they specifically stated Parks "by force, violence and

---

[6]As the court noted in Lewis, 2017 WL 368088, *2 n. 2, cases interpreting crimes of violence under the ACCA can be used for determining a crime of violence under the Guidelines because "the definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other." (citing United States v. Hopkins, 577 F.3d 507, 511 (3d Cir. 2009)).

intimidation, did intentionally take from the person and presence of another, money ..." from various banks and financial institutions. When Parks pled guilty to all six counts in the information he admitted to the above stated elements. *See* Wilson, —F.Supp.3d—, 2016 WL 6310620, *10 (one element of armed bank robbery requires "a taking 'by force and violence, or by intimidation' [which] necessitates the use, attempted use, or threatened use of force.") (citing 18 U.S.C. §2113(a)); *see also* McBride, 826 F.3d at 296 (Court held that "[a] taking by intimidation under §2113(a) [] involves the threat to use physical force" because "[t]he defendant must at least know that his actions would create the impression in an ordinary person that resistance would be met by force."); U.S. v. Robinson, 844 F.3d 137, 141 (3d Cir. 2016) (Third Circuit held that "[defendant's] Hobbs Act robbery is a crime of violence under the elements clause [of 18 U.S.C. §924(c)(3)]" since "in committing robbery [defendant] (1) used or threatened force, violence, or injury to person or property, and (2) used a firearm in order to intimidate a person.").

Thus, the court finds that the Probation Office correctly determined that Parks' instant armed bank robbery offense, as well as his prior federal conviction for bank robbery, are crimes of violence under the elements clause of the Guidelines. Since the court finds that federal bank robbery is a crime of violence under the elements test of §4B1.2, once again, it does not need to address the constitutionality of §4B1.2's residual clause. *See* Wilson, —F.Supp.3d—, 2016 WL 6310620, *9-*10.

Next, the court must decide if Parks' prior Connecticut conviction for first degree robbery can also be used as a predicate offense for purposes of the career offender provision. "In the ordinary case of identifying whether a prior conviction fits the §4B1.2(a)(1) definition, a court simply asks 'whether the state crime has the use or threat of physical force [against the person of another] as an element of the offense.'" Graves, 2016 WL 5934206, *4 (citing Brown, 765 F.3d at 189; U.S. v. Remoi, 404 F.3d 789, 794 (3d Cir. 2005)).

Quite recently in *Steiner*, the U.S. Supreme Court remanded a case to the Third Circuit to determine if the defendant's 1993 Pennsylvania burglary conviction was categorically a crime of violence based on Mathis. Defendant Steiner filed a petition for certiorari arguing that under *Mathis* his state burglary conviction was not a crime of violence and his sentence should not have been enhanced. In *Steiner*, 2017 WL 437657, *11 the Third Circuit stated:

> *Mathis* is the latest in the Supreme Court's series of opinions on how prior convictions can be used as predicate "violent felonies" under the Armed Career Criminal Act ("ACCA," 18 U.S.C. §924(e)), precedent that generally applies also to "crimes of violence" enhancements under the Guidelines. *Mathis* further refined the Court's jurisprudence about when, in applying an elements-based enhancement or analysis, a court may use the "modified categorical approach"—appropriate for statutes that are "divisible," listing elements in the alternative or describing separate crimes, and which is employed to determine what crime a defendant was actually convicted of—instead of the "categorical approach," to which we turn when a statute is not divisible.

(Footnotes omitted).

In light of *Mathis* and *Stenier*, the court must determine if the Connecticut state statute at issue has separate elements or if the statute "defines one crime, with one set of elements, broader than [the] generic [crime]." Mathis, 136 S.Ct. at 2250. The Third Circuit stated in Steiner, 2017 WL 437657, *11, that "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." (quoting Mathis, 136 S.Ct. at 2251). In *Mathis*, the district court erred by treating the Iowa burglary "statute's separate means of committing the offense as if they were elements." Id. As such, Parks' Connecticut first degree robbery conviction cannot qualify as a predicate under the guidelines under the elements-based categorical approach if the elements of this crime are broader than those of a listed generic offense.

In Shabazz v. U.S., 2017 WL 27394, *11 (D.Conn. Jan. 3, 2017), appeal pending,[7] the court stated that "Section 53a–133 of the Connecticut General Statutes defines a basic robbery as follows:

> [a] person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

---

[7]In Shabazz v. U.S., 2017 WL 27394, *14, the district court held "there is sufficient evidence that Connecticut's basic robbery definition [contained in Section 53a–133] does not necessarily require the use of 'violent force.'"

Moreover, Parks was convicted of first degree robbery, (Doc. 39 at ¶82), in violation of Conn. Gen. Stat. Section 53a-134, and not simply basic robbery. In U.S. v. Wiggan, 530 Fed.Appx. 51, 56-57 (2d Cir. 2013), the Second Circuit stated:

> In order to commit a first degree robbery under Connecticut law, the person must [commit simple robbery, as defined in Section 133, and] also cause a serious physical injury to a non-participant in the crime; be armed with a deadly weapon; use or threaten the use of a dangerous instrument; or display or threaten the use of what he represents to be a gun. Conn. Gen.Stat. §53a–134.

*See also* Shabazz, 2017 WL 27394, *14.

The Third Circuit in *Steiner*, 2017 WL 437657, *11, stated, "[t]he question *Mathis* tells us to ask—are these alternate means or alternate elements?—can be resolved by reference to "authoritative sources of state law" or, if necessary, "the record of a prior conviction itself ... for the sole and limited purpose of determining whether" we confront means or elements." (citation omitted).The Third Circuit in *Steiner*, 2017 WL 437657, *13, held that "[u]nder the categorical approach,[ ], a conviction under the Pennsylvania burglary statute in question is not a predicate § 4B1.2 'crime of violence'" and that defendant's state burglary conviction should not have been used to enhance his federal sentence.

In Wiggan, 530 Fed.Appx. at 57, the Second Circuit found that "first degree robbery under Connecticut law falls squarely within the first prong of the definition of 'violent felony,' which covers offenses having 'as an element the use, attempted use, or threatened use of physical force against the

person of another.'" (citing 18 U.S.C. §924(e)(2)(B)(I)); *see also* Shabazz v. U.S., 2017 WL 27394, *11 (citing McCarthy v. United States, No. 15-2543 (2d Cir. March 15, 2016) ("observing that petitioner's prior Connecticut robbery conviction 'still qualifies as a 'violent felony' because it had 'as an element the use, attempted use, or threatened use of physical force against the person of another.'"). Thus, the Second Circuit in *Wiggan* concluded that [defendant's] two first degree robbery offenses [under Connecticut law] are violent felonies within the meaning of 18 U.S.C. §924(e)(1)." Id.

In the PSR, (Doc. 39, ¶ 82), the details of Parks' Connecticut first degree robbery conviction indicated that during the theft Parks stated to the bank teller, "[t]his is a robbery, give me twenties and fifties." The PSR states that "Parks reached into his coat pocket to make it appear that he possessed a firearm during the robbery." The teller then gave Parks about $16,000 and he fled the bank.

The court finds that the crime of first degree robbery under Connecticut law as defined above contains alternate means of committing the core robbery element of theft by either inflicting serious bodily injury, or by using or threatening the use of a dangerous instrument. The above discussion of first degree robbery under Connecticut law reveals that it is a single crime that has multiple ways of meeting the element of committing a theft by "the use, attempted use, or threatened use of physical force against the person of another." This "strongly suggests that the statute's breadth turns on means, not elements." In short, the court finds that the Connecticut statute at issue

22

lists alternative means, not elements. Thus, "[t]he statute is not divisible and, after *Mathis*, a categorical approach, rather than a modified categorical approach, must be used."*Steiner*, 2017 WL 437657, *11-*12.

Under the categorical approach,[8] the court finds that Parks' Connecticut first degree robbery conviction under Conn. Gen.Stat. §53a–134 satisfies the use of force provision in §4B1.2(a)(1) since an essential element of this offense is the use or threat of immediate use of physical force upon another person. *See* Johnson, 559 U.S. at 140; *see also* Knight, 2016 WL 223701, *8 (court found that first degree robbery under New Jersey statute qualified as a crime of violence for purposes of the guidelines since it "has as an element the use, attempted use, or threatened use of physical force against the person of another."). The court finds that the Connecticut statute is not more broad than the generic robbery, and it has the same elements as the generic robbery in the MPC, which states that if the person during the course of the theft "threatens another with or purposely puts him in fear of immediate serious bodily injury", then he is guilty to robbery. In fact, when Parks

---------------------

[8]Under the categorical approach, "[i]f the relevant statute has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate." Descamps v. United States, —— U.S. ——, 133 S.Ct. 2276, 2283 (2013)(citation omitted). Thus, a statute can "only act categorically as an ACCA predicate under the Elements Clause if it necessarily 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Villanueva v. U.S., ---F.Supp.3d ----, 2016 WL 3248174, *5 (D. Conn. June 10, 2016) (citing 18 U.S.C. §924(e)(2)(B)(I)), appeal pending.

committed his Connecticut first degree robbery offense, he intentionally put the bank teller in fear of immediate serious bodily injury by reaching into his coat pocket to make it appear as though he had a firearm.

Although the district court in Shabazz, 2017 WL 27394, *15, recently held that "[defendant's] first degree robbery conviction under [Connecticut law] section 134(a)(2) does not necessarily require violent force, and therefore cannot serve as an ACCA predicate under the Elements Clause", this court disagrees and will rely upon the Second Circuit decisions in *Wiggan* and *McCarthy*. Noting also that an appeal is pending on *Shabazz.* Indeed, as the Third Circuit recognized in *Steiner*, 2017 WL 437657, *12, "the divergence of outcomes after *Mathis* suggests that the 'elements or means' inquiry is not quite as easy as the Supreme Court thought, not the least because state legislatures and state courts do not draft their laws and craft their decisions with this particular distinction in mind."

The court also looks to other district court cases in Connecticut which found that robbery under Connecticut state law is categorically a crime of violence under the guidelines and under the ACCA. In Carter v. U.S., 731 F.Supp.2d 262, 273 (D.Conn. 2010), the court held that defendant's "conviction of robbery in the 3rd degree, in violation of Conn. Gen.Stat. §53a–136, is categorically a violent felony as that term is defined in §924(e)(2)(B)(I)." The court stated that "under the categorical approach, the court needed only to look to the fact of [defendant's] conviction to conclude that, in pleading guilty, he necessarily admitted a fact establishing the

24

required element of the predicate violent felony offense—the use or threatened use of force." Thus, the court in *Carter* concluded that defendant's "conviction of robbery in the 3rd degree was properly counted as a prior conviction under the ACCA." Id.; *see also* Harris v. U.S., 2013 WL 3874474, *4 (D.Conn. July 25, 2013) (Court held that attempted robbery in the third degree in violation of Connecticut law "clearly constitutes a crime of violence" under the career offender guideline since "[t]he counts of the information to which [defendant] pleaded guilty show that he assaulted and attempted to rob a victim while armed with a firearm.").

In sum, the court agrees with the cited Second Circuit decisions as well as the *Carter* and *Harris* Connecticut district court decisions and finds that, based on the categorical approach, first degree robbery under Connecticut state law constitutes a "crime of violence" under the elements clause of U.S.S.G. §4B1.2(a)(1).

Since the court finds that Parks' instant offense and two stated prior convictions constitute crimes of violence under the enumerated offenses clause and under the elements clause of U.S.S.G. §4B1.2, his objections to the PSR will be overruled.

Finally, Parks requests a downward variance pursuant to 18 U.S.C. §3553(a)(1) seeking a term of confinement of 120 months or less based on his age (61), his mental health issues and his physical conditions which allegedly are "chronic diseases that will never be cured." He states that such a sentence will punish him, deter further criminal conduct and protect the

public. He also seeks to be designated to a BOP medical institution.

No doubt that "[w]hen imposing a sentence, a district court must follow a three-step process." U.S. v. Handerhan, 739 F.3d 114, 120 (3d Cir. 2014). Specifically, as the Third Circuit instructed:

> First, "[c]ourts must determine to calculate a defendant's Guidelines sentence precisely as they would have before [United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ]." United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (citations omitted). Second, district courts "must formally rul[e] on the motions of both parties, and stat [e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[e] into account our Circuit's pre-Booker case law, which continues to have advisory force." Id. (alterations in original) (citation omitted) (internal quotation marks omitted) (emphasis added). Third, districts courts must "exercise [] [their] discretion by considering the relevant [§3553(a)] factors in setting the sentence they impose regardless [of] whether it varies from the sentence calculated under the Guidelines." Id. (alterations in original) (citation omitted) (internal quotation marks omitted). "During the third step, district courts should engage in 'a true, considered exercise of discretion, including a recognition of, and response to, the parties' non-frivolous arguments.'" United States v. Friedman, 658 F.3d 342, 359 (3d Cir. 2011) (quoting United States v. Jackson, 467 F.3d 834, 841 (3d Cir. 2006)).

Id.

Following the three steps of the *Gunter* process, ensures "that the District Court's decision-making process is both logical and fair." Id. (citation omitted). The Third Circuit recommends that the district court "consider the steps separately and sequentially." Id. "Failure to adhere to this process may result in a procedurally unreasonable sentence." Id. (citation omitted).

The court will schedule and conduct a sentencing hearing and at the hearing, both parties will be given an opportunity to argue the merits of Parks'

26

request for a variance and to discuss the §3553(a) factors, including "the need for the sentence imposed [in light of the defendant's and society's interests]." Id. at 123. The court will then formally rule on Parks' motion for a variance and state on the record the reasons for its ruling.

## III.   CONCLUSION

Accordingly, Parks' objections to the PSR are **OVERRULED**, (Doc. 46), and, the court finds that Parks qualifies as a career offender under U.S.S.G. §4B1.2 (2015). (PSR Doc. 39 at ¶ 64) As such, the court finds that the PSR properly determined that Parks' total offense level is 31, his criminal history category is VI and his advisory guideline range is 188-235 months imprisonment. (PSR Doc. 39 at ¶ 110). Parks' motion for a downward variance is held in abeyance until his sentencing hearing. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 21, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2015 CRIMINAL MEMORANDA\15-0152-01.wpd

27